Thank you. Nice to see you. Okay. I think you all are familiar with our rules here. You're familiar with the timing issues. You need to watch the clock. Please note that when you're referencing the record, we appreciate a record cite. As well, please recall that rebuttal is for rebuttal only. And with that, we will get started with case number 20-5018, HCB v. McPherson, et al. And we'll begin with Mr. Richardson. Good morning, Your Honors. My name is Jeff Richardson, and I am here today for a— When a bully steals a toy from a child in a playground during recess and makes the child chase the bully all around before finally giving the toy back just after a teacher gets involved, if the bully turns to the teacher and says, oh, I gave him the toy back, you know, nothing to see here, the child's not in the same position that they were in before the toy was stolen from him or her in the first place. We all know that. Full compensation, trying to put a plaintiff in the position that they were in before the wrongdoing occurred is not an exact science. We all know that as well. And so our law tries the best it can by establishing rules on what can you do to put a plaintiff back in the position that they were originally in if the plaintiff is successful at trial. Now, for some misdeeds, the ones that oftentimes have both civil and criminal consequences, our law creates multipliers, double damages or triple damages. And sometimes the reason for that is primarily punitive. You know, you want to deter this conduct and you want to punish it. And in those cases, the fact that the plaintiff gets the money, is the beneficiary of it, is really just sort of a side effect. In fact, sometimes you even have statutes that say that the plaintiff doesn't get all the triple damages, that it goes, you know, somewhere else to the state or something. But other times, when you have triple damages, the primary aim is to provide the full compensation to the plaintiff, knowing that it's difficult, for example, to articulate the specific damages and so they allow for triple damages. Now, in some cases, those triple damages are not going to be enough. And in other cases, it's going to be more than enough to compensate. Okay, that's really not the question here. The question is kind of, at what point in time do the triple damages sort of attach such that having then paid the single damages isn't enough? That's really what this case is about. And I kind of wonder, no one has really analyzed the text of 18 U.S.C. 1964C, which says, you can sue and so forth, and shall recover threefold the damages he sustains. Now, doesn't that sound like the present as opposed to the past? So wouldn't that seem to direct us to the point at which the court makes the determination of what's owed rather than some prior moment? The law never really looks at the damage that you have on the day of trial. I mean, a perfect example of that, Your Honor, is if somebody in a tort case, if somebody injures me and breaks my knee, my knee may be better by the time I get to trial, but the damages that I'm getting for full compensation, what I am standing to sue for, has to do with what happened from the day of the tort onward. Onward? Yes. Yes. But the point is, in that argument, if they had paid for your hospital bills, for example, along the way, you wouldn't get to recover the hospital bills at trial. Right. It would be part of your sustained damages, but if the statute said that you get treble, your sustained damages, and part of those damages are hospital bills, if the statute was written such that that's something that was treble or double, if it was a two times damages, then it would come into play. But I recognize, Your Honor, that there's two ways to look at this. There's no question about that, and that's sort of the point of our briefs, is that for decades, courts grappled with the question of, when you have a defendant give some of the property back, in the context of RICO and similar statutes, do you first treble the damages and then set off what they give you back, or do you first set it off and then treble what's remaining? And if they give you everything back, if they give you the full toy back, that there's nothing left. That's the question. I'm not sure, and if you answer me, then maybe you can repeat it, because I'm not sure you really answered my question of the text of 1964C, the damages he sustains. Right. Not sustained, or will sustain, but sustains. What difference does that make? How should we analyze that? Well, courts have looked at it, and they have interpreted it as what you have sustained, sustains. No matter how you read that word, it's all the damages that occurred. And, again, this is not just me saying this at the podium. This is what courts say. For example, the liquid air case was set at first, and there's another one I'm going to talk about, too, which is very important. In 1987, the Seventh Circuit faced this very question for liquid air, and they looked at those same words in the statute that you just said. In fact, I think the statute's words are important for two reasons. The beginning of 1964C sort of answers the question of standing, which, of course, is why we're here today, when it says any person injured in his business or property, that's who can sue, any person. But then it goes on to the language that you just read, shall recover threefold the damages that he sustains. And when liquid air interpreted that language, what liquid air said is you should interpret treble damages on a spectrum of is it punitive or is it remedial or compensatory? Because if the point is to compensate, then you do need to take into effect all of the damage that took place and you need to treble it first. The specific thing that they said is the reason that they interpreted the RICO statute as being remedial. But wasn't liquid air at a different time frame? I mean, in other words, I mean, 1987 or? A different time frame in the case, okay? The payment of the debt wasn't before the amended complaint. It was after the judgment. It was at the end, exactly. Okay. Well, doesn't that, that doesn't seem to me to have much to do with this case. If they'd waited until judgment was entered and then said, oh, well, we paid the single damages and we ain't going to pay the treble, I think we would be in a, you would be the appellee. Well, I mean, the language that they said, the reason that they said that you triple first before you deduct is because of the difficulty in itemizing the sustained damages caused by a RICO violation. And I think that's the whole point. That logic, that explanation would not make sense if all that you looked at is what damage was still there the day you walked into court. And of course, keep in mind, the day that we walked into court, we had not been paid back yet. It wasn't until after years and years and years of not being paid and a month after the lawsuit was filed that the defendants finally said, here you go, here's the money, now don't come after me for treble damages. Here's the money plus the interest plus the attorney's fees. Exactly, yes, the things that are due. But not the treble damages, which the statute, we believe, says very clearly that we have a right to get. And so if it was punitive damages— Because you were paid before you filed the RICO claim. I'm sorry, say that again? Because you were made whole or paid before the RICO claim was filed. You don't seem to be— We received the sustained damages after we filed the lawsuit. So first we sued and then a month later, so it was end of what, 20, whatever year it was, and the beginning of the next year, about a month later, that's when— But it was before the amended complaint. It was before the amended complaint. But the amended complaint, we believe the amended complaint relates back. And this is what Judge Clement was pointing out. Why doesn't the fact that when you receive a judgment in court, you get post-judgment interest, okay? Why doesn't that compensate you for the delay? Like you say, you don't know. I mean, is it like the kid losing their toy or whatever? Or is it like you invested in something that's worth a lot more because interest rates right now are really low and post-judgment interest rates are higher? So that's the compensation that the statute has provided. So why isn't that the compensation for the delay that you get the post-judgment interest? Because the RICO statute says RICO is different, Your Honor. And again, this is not me saying this. This is the Supreme Court. But RICO isn't a debt collection statute. Well, but if— I'm not saying you can't necessarily sue for RICO. We're not to that point. But it is not specifically a debt collection statute that is very terminologically based on that, right? Look at the words in the statute, Your Honor. The ones that you just read, recovered threefold the damages, it doesn't say threefold the damages, comma, unless it's debt collection, in which case just one times the damages is enough. The statute doesn't draw a distinction between the type of RICO claim. And you're right that there are many different types of RICO claims. And if we have standing, if you reverse and send us back to the trial court, we may win, we may lose on our claim on the merits. We don't know today who's going to win. We think we will. I'm sure my opponents think that they will. But the question here is just do we have a right to be there in the first place? And when the Supreme Court in Pacific Care analyzed RICO, and this gets to the question you asked about interest, is interest enough to compensate you? In some cases, it is. That's what it's designed for. But Congress has decided that in RICO, it's not. And what the Supreme Court said in Pacific Care in 2003 is it is important to realize that treble damages have a compensatory side serving remedial purposes in addition to punitive objectives. And they then went on to explain that some statutes, like the False Claims Act statute, are really punitive. You know, you can have a whistleblower plaintiff in a False Claims Act statute, in a TTAM action, and they haven't been injured at all. But they can still get a percentage of the recovery, but it's not compensatory. It's punitive. But what the Supreme Court said is that in antitrust cases under the Clayton Act and in RICO cases like what we have here today, the goal is, well, the words that they used was the treble damages provision contained in RICO itself is remedial in nature. And they went on to say designed to remedy, with italics that the court added, economic injury by providing for the recovery of treble damages. Now, we can sit around and say we believe that legal interest is enough. You can get full compensation just with legal interest. But Congress makes the law, and they said that in RICO cases, treble damages is what provides the full compensation. They didn't really tell us the time we measure that. I mean, that's my concern. I totally get if you'd gone to a trial and the judge was about to enter judgment, at that point, obviously, they hadn't paid. You'd get the treble. I don't have any question about that, all other things, assuming RICO applies and all other things being equal. It's just that I just keep thinking of a case you all did not cite, which is this JCB case we had in our court where we referred it to the Texas Supreme Court. And granted, the Texas Supreme Court was construing a Texas statute. It was different languages about an unpaid commission. But it really studied this point about kind of when are you asserting your damages. It's at the time of the trial. Now, yes, you may have past damages, as you say, from your knee. But your past damages may be less if the knee is recovered than it would be if it was still hurting and so forth. And that's all assessed at that moment. Now, why doesn't that basic analysis work here? When the courts have interpreted the same phrase that you're looking at, they have said the reason it's remedial is because of the difficulty in articulating sustained damages. So what you're assuming, Your Honor, is that the only sustained damages were the $2 million and then perhaps legal interest and attorney's fees. And that's one view of the world. But what the courts that have interpreted it in our favor have said is that's incorrect because to be remedial, to be compensatory, you don't have the full compensation. I mean, it's a yin and yang, right? We all know that the RICO statute is very hard to prevail under. It's difficult for a plaintiff to win. You don't always. But if you do, then you can recover what the statute gives you. So let me ask you this. You were saying if we were to reverse and remand. So let me walk through that. If we were to reverse and remand, let's assume, arguendo, you could prove sort of the merits of the RICO case, would your opponent be able to say, yeah, but we already paid this debt like six years ago? And would the jury be able to say, so we'd say what sum if any if paid now in cash would fairly reasonably compensate HCV for their damages, would they be able to say zero? Well, I mean, I don't think that would be upheld in appeal because remember that's what you have in the U.C. Tech case that we cite,  In U.C. Tech, there was the arbitration in Singapore in which the plaintiff got 100% of the sustained damages. And then they came into court in the United States for the RICO claim. And the defendant said, whoa, whoa, whoa. Well, but there were different defendants also. There were foreign defendants amenable to arbitration in Singapore, and then there were defendants that were not amenable to arbitration. But there were some that were the same, Your Honor. And those were the defendants that said you've had full compensation. And RICO doesn't turn upon, you know, which defendant it is. RICO says you get treble damages. And so when the defendants there said, you've got full compensation, nothing to see here, the Ninth Circuit said, well, that's inconsistent with how RICO has been interpreted citing Pacific here. Much like this court did in the Maldonado case, which was the case with the counterfeit coins where the question was once the person died who was the victim, do the heirs have a claim for treble damages? And the defendants there said, you know, they can't see treble damages because punitive damages don't pass on down. And this court said, no, that's not how the U.S. Supreme Court has instructed us to interpret it. So let me ask you, if you were going to go with your construction of the law, what would be the moment at which the treble come into play? Is it the day you filed a complaint? I mean, what if they had heard through the grapevine that you all were about to file a complaint, and they paid you before you did? So you've never actually filed a lawsuit, but as you were drafting up the complaint, the money landed on your desk. Yeah, I wanted the exact same thing. So I'm asking you, how would you ride the opinion if we're going to ride it your way on that point? It would definitely be if they paid after the day the lawsuit was filed. And that's what this case is, so that's all we have to worry about here. But I will have to admit, Your Honor, that if somebody paid the day before or the month before, I think it becomes a closer call then, and I don't know what would happen. I had actually wondered if my opponents would brief that issue because I was thinking about it myself, and I couldn't find a case that addresses it. So that would have been a case of first impression. But there's no question, once you've filed your lawsuit, at that point you're suing for the damages that you had before that. And I see that my time is up. Thank you very much. You saved time for a bottle. Thank you. Mr. Knight. Good morning, and may it please the Court. I'm Joe Knight. I represent 30 of the 37 athletes, but my remarks this morning are intended to be on behalf of all of them. The question in this case is not whether trouble damages under RICO are remedial or punitive. The question is whether HCB's right to enforce a judgment on a contract claim against a single individual mutated into a RICO claim against some three dozen lawyers and accountants and others, while HCB was still in the midst of its efforts to enforce the judgment against the one and only Judgment Debtor. District Court correctly answered no to this question because— The District Court didn't do that on the merits of RICO. It did that on the fact that the money had been paid. Well, it did it on— Your Honor, the District Court said its analysis, on the merits of RICO because HCB never sustained an injury, never. Yeah, but it wasn't the merits of like did they do this wrong and were they in some sort of conspiracy to ruin the world. It was the question of, well, but HCB's been paid, so we're done. That was all the District Court addressed. It did, Your Honor, but it did so in the context of standing. Yeah. Yes, yes. And that's what makes it different. From all the cases that they cite, and I definitely want to discuss that, if you look at—well, let me unpack it this way if I can. When HCB got a judgment against McPherson, it had—it got the right to enforce that judgment under Federal Rule of Civil Procedure 69 and the substantive provisions of Mississippi state law. It got the right to enforce that judgment solely against McPherson. The only way that that right to enforce a judgment against the one and only judgment debtor could somehow morph into a RICO claim against all these people that had nothing whatsoever to do with that judgment is if the racketeering activities caused HCB to lose its ability to enforce that judgment against the judgment debtor. And we know that didn't happen. When HCB came to court, both in its original complaint and still in its amended complaint, it pleaded that its judgment collection efforts against the one and only judgment creditor were still ongoing. When that judgment creditor paid the judgment with interest in everything, that confirmed that HCB had never suffered a statutory injury that it could sue for under RICO. Now, the cases that they cite— Wait a minute. What is wrong with the argument that if we're going to have to, like, set a timeline for this, the day of the complaint, still owe the money, that's enough to travel it? What's wrong with that argument? Well, there's several things wrong with it, Your Honor. Starting with, that could be the day after the judgment was rendered. Right? They could come into court the next day and say, actually, I get to have three times my judgment, not just one time. Well, but they would have to show a RICO violation. They would. Ability to show a RICO violation in preventing enforcement of a judgment is a little hard if it's the day after the judgment and you haven't done anything to collect on the judgment. Right. My answer was perhaps— That would be a fun trial for you. What would you do to collect the judgment? Nothing. Yeah. You're right. The issue, though, is the reason it can't be the day that it's filed is because of their own admission that they were still trying to collect the judgment from the judgment debtor. That means the enterprise at that point in time had not yet caused any injury. It didn't. It succeeded on the rights that came with that judgment. Compare it. I think the Uthe case that they say is their best case is probably a good way for me to address it because it addresses the bully analogy and it addresses, Your Honor, the he sustains language as well. In Uthe, the enterprise, the alleged criminal enterprise, is the thing that allegedly stole the foreign subsidiary. If you accept that allegation as true, then at the time the foreign subsidiary was stolen, the company, Uthe, had sustained, Your Honor, sustained an injury in the amount of the value of that subsidiary. That's why the court said,  When you come back to the United States, the enterprise is still on the hook for the rest of the trouble damages. The situation we have here is totally different in the sense that HCB never sustained an injury. Remember, the HCB is in the business of buying debt. Its initial right to collect $2 million from McPherson had nothing to do with alleged racketeering. That original $2 million right that they had came because HCB purchased a loan that was in default that Ms. McPherson had personally guaranteed. Then HCB prosecuted that contract claim to judgment against Ms. McPherson. They have never alleged, unlike Uthe, unlike Malvino, unlike Liquid Air, unlike every other case they rely on, they have never alleged that the alleged enterprise here had anything to do with the fact that they were owed $2 million in the first place. The only person on this planet who was responsible for that $2 million in debt. You could never sue for lost debt under RICO. And so, I mean, that's what you just argued. That's not what I intend to argue, Your Honor. The case is resided. So where is your timeline? What is the date that you think the treble kicks into gear, assuming, arguendo, all the other things occurred, you entered in, your people were racketeering and throwing money in the lake and whatever? It would be at the point in time when the racketeering activities took away, defeated, and caused the plaintiff to lose its ability to collect the judgment from the judgment debtor. That might happen, for example, suppose we kept the ball in the air long enough to accept their allegations here. We kept the ball in the air long enough for Ms. McPherson to discharge the debt, the judgment in bankruptcy. Now they can't enforce it against her anymore. Then they might be able to come after somebody else for that judgment. Because the injury, again, in that case, the injury caused by the racketeering would not be the $2 million. It would be that you caused us to lose the ability to collect the $2 million from the one person who owed it to us. The same thing might have happened if she had died or if she had left the country. If this case had gone to trial, y'all had never paid, but the money's still floating around somewhere, it's in Switzerland or something, y'all still would have won. Well... Even assuming, arguendo, there was racketeering and hiding and all of the other things, okay, because Ms. McPherson was still alive and not in bankruptcy and the money was somewhere in the world and not on the moon. I think it would depend on whether their collection efforts had been defeated. In the facts scenario that you're giving me, I don't know what the evidence, what the proof would have been that they're still pursuing Rule 69 judgment enforcement procedure. It's not a timing for you at all. You don't think it's a timing issue, as I've discussed with your opponent. It's for you to some other thing, like whether the money's still floating around somewhere. Well, it's an accrual issue. And this is why, you know, there's only four or five or six cases in the RICO's history that have been based on this claim like theirs that you, the enterprise, caused us to lose our ability to collect a debt that was owed to us. And half of those cases are dismissed because the case is premature. And it's premature because the debtor, the one who is owed the debt, can't yet establish that its ability to collect from the debtor has been defeated. And the others are that they've been paid. And all of the ones where they've been paid, the courts hold, you were never injured. You never had the racketeering injury that you claim because your right to get this debt from the debtor was satisfied. It was fulfilled. So the enterprise never harmed you. And so that's what I say is the test. So how do you construe the he sustains language? What time frame is sustains? I actually agree with my opponents that in the case where an enterprise commits racketeering acts that cause an injury, that that's the time you measure the he sustains. And I agree with them. That's why you think it came out the way it did. That's why the enterprise couldn't escape treble damages after the Singapore Arbitration Award had been paid because the enterprise had already caused the plaintiff to sustain damages measured by the loss of its subsidiary. Again, in our case, there's no possible way. They haven't alleged that they sustained a $2 million injury as a result of racketeering. Their $2 million right had to do with the fact that they bought a contract claim against McPherson. And so it is only if the point in time came where the enterprise caused them to lose the ability to collect that judgment from the judgment debtor that they could possibly state a claim, could possibly have sustained a loss at the hands of the enterprise. That's why this case is different from every case they cite. What would be an example of the actual situation that you're talking about? Like one of the cases we cited, the debtor was in bankruptcy. And the plaintiff came to court suing the enterprise and said, you caused us to lose our ability to collect this debt from the debtor because he's in bankruptcy now. And the court said, well, that claim is not ripe yet because we don't know if the debt will be discharged in bankruptcy. We've got to wait and see how that turns out. And so I think an example would have been if while the alleged racketeering here kept them from collecting the judgment, if Ms. McPherson had discharged the debt in bankruptcy, then they could have come on and said, okay, now we've lost our ability under Rule 69 and under Mississippi procedures to collect this judgment from the judgment debtor. And the reason we lost that was because of this racketeering activity. At that point, they may have sustained a loss of their right to enforce the judgment, valued at $2 million, and they might have been able to sue the enterprise for trouble that amount. But again, that just didn't happen here. And really, the same analysis governs their alternative claim. Okay, but what about if in the bankruptcy court, let's just say $2 million was owed, not this complicated number. If in the bankruptcy court, the creditor had been paid $1 million and then the rest was discharged, what would be the amount you could go after the enterprise for? Triple of $1 million. Right. So that would suggest that the timing, again, still matters. Well, I think it matters. Honestly, I think we're saying the same thing. In that case, the timing would matter because the debtor, the efforts to collect the debt from the debtor were successful to the extent of $1 million. And the enterprise in that hypothetical arguably caused the creditor to lose its ability to collect $1 million from the debtor. Therefore, the enterprise could be liable for trouble the amount it caused. It caused the plaintiffs to sustain. In our case, the alleged enterprise never caused them to sustain any loss whatsoever. And that's why I say the same analysis governs their alternative claim for a loss investment opportunity. And before I lose this, I do want to make it clear. We did not argue and the district court did not hold that HCB loses on that loss investment theory because they didn't plead it with enough specificity. This is not a claim that they would have a chance of pleading a third time to make it valid. It's invalid as a matter of law for several reasons, but the most compelling one is what the court has already mentioned, post-judgment interest. And again, the analysis has to be tailored to the fact that their claim is based on an underlying judgment against one individual. When they got that judgment, they also got the right to pursue the individual for interest for every day that that individual delayed in paying the judgment. The only way they could have a claim for the time value of money against somebody else, against the alleged enterprise here, would be if the enterprise somehow defeated their right to get compensated for the time value of money from the judgment debtor. And again, what we know in this case is while they were still trying to enforce the judgment against McPherson, they were paid the full amount of the judgment and every nickel of post-judgment interest that the law allows for. So again, they never reached the point where they had an injury to their business or property as required under RICO. So I asked your opponent how you would sort of write the conclusion paragraph in the opinion. What's your conclusion paragraph in the opinion, if we went your way? The conclusion paragraph is that a judgment creditor has a claim only against the judgment debtor. And unless and until the alleged RICO enterprise causes the judgment creditor to lose its ability to enforce its judgment against the judgment debtor. In this case... And so if the person doesn't, you know, die or file bankruptcy, but instead hides the money in, I don't know, Switzerland or maybe in some country that doesn't recognize America at all. I'll just say country X that's an enemy of the United States. All the money has been put in some bank account there and country X does not recognize judgments from the U.S. But McPherson's still alive and well and living in, you know, What about that? I think that's a harder case. I think it's conceivable that they could have pleaded a RICO case in that circumstance. They might not have been able to prove it. But if they had come to court and said, our efforts to collect this judgment under Rule 69 and the procedures available to us in Mississippi have been exhaustive. We have looked under every rock and the money is either gone or secreted away or something. We can't get to it. We're done. Then they may have at least stated a cause of action. But that's not what they're saying here. They're saying they tried for years and went through all the, I mean, it's been a couple of decades since I've done collection processes, but I remember it was always a little bit challenging to go collect on a judgment when the debtor wasn't really willing to pay. So, you know, I guess I'm just having a little trouble understanding that conclusion paragraph, like what's enough. I gave you a real extreme hypo of the country ex-enemy of the U.S., but what about if it is Switzerland, which is not an enemy of the U.S., but it maybe is a little bit hard to find money in? Then the factual debate might be whether they have, in fact, exhausted their efforts. But, Your Honor, I want to make sure we don't lose this point. That is absolutely not what they're saying here. They are not saying they exhausted their efforts. They pleaded very specifically that their efforts to collect the judgment were continuing even when they filed the amended complaint. They said to the Mississippi court and got compensated for judgment collection efforts all the way through March of 2019 after the judgment was paid. They never said they stopped trying to collect the judgment under Rule 69. And that's why I understand, Your Honor, there may be other cases which are closer to the gray area, but this one isn't even close. This one, the plaintiff has admitted from day one, we were still trying to collect the judgment from the one and only person on this planet who owed it to us at the time we succeeded. And we collected the judgment, and we collected every nickel of pre-judgment interest. In a minute left, let me just quickly address their request that this court send them back for a third chance to try to plead this claim. First of all, there isn't any question at all that their lack of amended prudent was intentional. They elected to stand on this second amended petition. Remember when the magistrate judge originally recommended dismissal, he recommended dismissal without prejudice. And we filed a specific objection on the sole point that the dismissal should be with prejudice because they couldn't cure these problems. And they didn't even respond. They didn't give the district court one argument why it shouldn't dismiss with prejudice. In the cases they cite for the idea that standing is normally not on the merits and so there should be a chance to plead again, those are cases where the merits were not addressed. If you look at the recommendation and the district court's order adopting it, they both say that they have considered the merits of this claim under RICO and that there's no way HCB could amend to correct the defects in their complaint and that is a fact. And this crusade against, you know, it was against Ms. McPherson, they got satisfaction from her, bringing all these other people into it should stop. Thank you. We have your argument and we'll hear the rebuttal from Ms. McPherson. The first thing that Mr. Knight just said was that the question here is not about whether it is remedial or compensatory. That's got to be the only question because if it wasn't for that, if it wasn't for the fact that the RICO statute says you get trouble damages and the Supreme Court and other courts have said that's compensatory and remedial, I wouldn't have an argument on standing. That is the entire argument, to get full compensation, to be restored to the position we were in originally. Congress has said we're done. But it's sort of compensation for what? And so he's saying because you all had not been deprived of the ability to collect, you didn't have anything to be compensated for. Well, I mean, that is a viewpoint, but the RICO statute says that you don't get the full compensation until you've got the trouble damages. And I . . . Counsel, what additional . . . I'm sorry to interrupt, but I'm going to build on Judge Hanks' point, I think. What are the additional damages that your client suffered alleged from the RICO activity, not the judgment that's outstanding? Let me give you an example. Beyond trouble damages. Right. We have the two arguments for standing today. We have the trouble damages and we have the lost investment income. One of the lost investment income arguments they make is that it's too speculative because who knows what we would have done with the money. Well, but that's what post-judgment interest or pre-judgment, that's what interest is for, right? This is the point, is that whether it's – does judicial interest account for that? Does a lost ability to – does that claim account for it? It's difficult to articulate. And when the Seventh Circuit said in liquid air that the reason it's compensatory is because of that very reason that it's very hard under the RICO statute to make a claim for sustained damages. But when you do it, you have a right to three times that. And so it's – yes. But counsel, three times what? Three times the sustained damages. The what in this case? The $2 million. So the judgment itself is the damage alleged to have been caused by the RICO enterprise? Absolutely, absolutely. And, again, that's my – it's the first example I gave. It was a silly schoolyard example. But it's like, you know, the guy finally gives you the toy back. And you say, oh, well, you're just as – even though you ran around in front of all the other kids and everything else, I mean, it's intangible stuff. But that's the way the law says you get – Well, but if the kid gave the toy back plus the – I mean, just to take it to maybe an absurd level. That's legal interest, right? Interest and whatever cost of collection that the kid had to get to get the toy back, getting the teacher involved and all those kinds of things. I mean, under the law, that would make that first kid whole, right? Well, I mean, Congress might change RICO one day and say that if you've got legal interest, you don't have a right to trouble damages, that legal interest is enough to put you in a virtual place. But right now it says trouble damages. I don't think RICO was entered as a, you know, judgment debt collection statute, okay? I'm not saying you can't apply. I'm just saying I don't think it was written for that. And so we don't know what Congress would do with that situation, but that gets me back to the language. I still – I'm not sure that either one of you all has well answered the he sustains question, but – Well, I mean – That's why we're the judges. I mean, keep in mind, Your Honor, that if you're struggling with interpretation, what we quoted in our brief is, and this court said it in Maldino, that RICO is supposed to be liberally construed to effectuate its remedial purposes. Well, but trouble damages are also not a standalone remedy. In other words, you've got to have the cause of action, so to speak, which depends upon damages caused by the RICO enterprise, and you just told us that the only damages you've suffered allegedly for the RICO enterprise actually constitute the judgment that was in the prior case. No, that's the – I didn't say that was the only damages, Your Honor. That's the sustained damages. There's a whole lot of intangible damages, and that's the whole point of the trouble damages. It's difficult for any plaintiff to show, you know, to list every single one. I know that in some cases it's easy to list your damages with specificity, but in RICO cases, Congress has decided that it is hard. So that's why – But like what, counsel? I mean, lost debt. I mean, I'm just – the Second Circuit line of – Everything that you would have done with the money, things that you would have – No, no, no, no. I don't think that's lost debt. Lost debt is, I guess, the $2 million, correct? And to counsel Opposite's point about frustrating the ability to collect that debt so that it's lost, here it wasn't lost because I think the Second Circuit cases say it's – even late payment is payment. And on that last point that you just said, on my last 15 seconds, this argument by opposing counsel that the lost ability to collect, RICO has to do with taking property. In every case, in every RICO case, whether it's lost debt or whether it's the cylinders that are in liquid air or the counterfeit coins in Molvino, the defendant can always return the property the day of trial or the day after the complaint is filed. But under RICO, that's not the full compensation. Thank you, Your Honors. I appreciate that. Okay. Thank you. We appreciate Russell and Martin and the cases under submission. And y'all are excused. Next, folks can come forward.